CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 AUG 16  AM 10: 49

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| STATE OF TEXAS *ex rel.* | ) | |
| JOHN DELHAGEN, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: |
| v. | ) | |
| | ) | **3 - 1 9 C V - 1 9 5 5 N** |
| ENDO SEDATION, LLC; | ) | **FILED UNDER SEAL** |
| TEXAS DIGESTIVE DISEASE | ) | |
| CONSULTANTS, PLLC; and | ) | **SEALED** |
| CEDAR PARK SURGERY CENTER LLP | ) | |
| d/b/a HILL COUNTRY SURGERY CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## RELATOR'S COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT AND TEXAS MEDICAID FRAUD PREVENTION ACT

*Qui tam* Relator, John Delhagen, on behalf of the United States of America and the State of Texas, hereby brings this action for violations of the Federal False Claims Act ("FCA") and the Texas Medicaid Fraud Prevention Act ("TMFPA") to recover damages and civil penalties as a result of Defendants defrauding the federal and state government in connection with Medicare, Medicaid, TRICARE, and other federal and state health programs.

As described below, Defendants implemented a "company model" scheme whereby owners of ambulatory surgery centers (ASCs) also created, owned, and operated separate companies, which companies employed or contracted with anesthesia providers to provide anesthesia services at the ASCs. Defendants' scheme involved improper patient referrals and offering and acceptance of kickbacks, in violation of the federal Anti-Kickback Statute. To conceal these actions and to obtain the benefit of such actions, Defendants certified to the federal and state government that their services in their claims for reimbursement complied with federal

1

law, including the prohibitions against knowingly and willfully offering, paying, soliciting, or receiving any remuneration to induce or reward referrals of items or services reimbursable by a federal health care program. In this case, remuneration was offered, paid, solicited, or received purposefully to induce or reward referrals of items or services payable by a federal health care program such that the Anti-Kickback Statute was violated, and the claims were therefore not reimbursable by government insurance programs.

Through these acts as described in detail below, Defendants knowingly caused the submission of false and fraudulent claims to the United States and the State of Texas.

## PARTIES

1. The United States of America is a party to this action on behalf of the U.S. Department of Health and Human Services and the Centers for Medicare and Medicaid Services ("CMS").

2. The State of Texas is a party to this action as a result of its funding of the Medicaid program.

3. Relator John Delhagen is a resident of Texas and previously provided anesthesia services to UAP Keller Endo, LLC ("UAP Keller Endo") and Endo Sedation, LLC, through an independent contractor relationship that began on or about October 10, 2016.

4. Defendant Endo Sedation, LLC ("Endo Sedation") is a Texas limited liability company. It has various office and mailing addresses located within Texas, including 8267 Elmbrook Dr, Suite 200, Dallas, TX 75247. Endo Sedation has a mailing address of 1999 Bryan Street, Suite 900, Dallas, Texas 75201 and its registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900,

Dallas, Texas 75201. Endo Sedation contracts with anesthesia providers to provide anesthesia services at ambulatory surgery centers. According to filings with the Texas Secretary of State, its CFO is Bryan Rhodes and President is James J. Weber. Eric M. Dow is also an administrator and authorized official.

5. Endo Sedation was formerly known as UAP Keller Endo, which was a Texas limited liability company located at 8267 Elmbrook, #200, Dallas, Texas 72547, which is the current address as Endo Sedation. Upon information and belief, UAP Keller Endo is the same entity as Endo Sedation. UAP Keller Endo contracted with Relator for Relator to provide anesthesia services on an independent contractor basis at Defendant Cedar Park Surgery Center LLP d/b/a Hill Country Surgery Center.

6. Defendant Texas Digestive Disease Consultants, PLLC ("TDDC") is a Texas professional limited liability company that bills itself to be the largest gastroenterology group in the United States. It was founded in 1995 by Dr. James Weber and has more than 70 locations in Texas and Louisiana. "TDDC has grown to include 159 physicians, more than 1,000 employees, 73 office locations, 37 endoscopy centers, 16 infusion centers and 95 hospital affiliations. In addition, it offers an extensive suite of ancillary services, including anesthesia, pathology, specialty and retail pharmacy, radiology, GI surgical services and infusion therapy."[1] Its mailing address is 1999 Bryan Street, Suite 900, Dallas, Texas 75201 and its registered agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Its manager is TDDC Parent, P.A., which is located

---

[1] TDDC, *Texas Digestive Disease Consultants Partners with Waud Capital, Forms The GI Alliance*, November 7, 2018, available at https://tddctx.com/texas-digestive-disease-consultants-partners-waud-capital-forms-gi-alliance/ (last accessed: July 8, 2019.)

at 8267 Elmbrook Drive, Suite 200, Dallas, Texas 75247, which is the same address

as Endo Sedation. TDDC's president and CEO is Dr. James Weber.

7.  Near the end of 2018, TDDC partnered with Waud Capital Partners to form The GI

Alliance, which is a partnership between both TDDC and Waud Capital Partners.

8.  TDDC's CFO is Bryan Rhodes and Mr. Rhodes is also CFO of Endo Sedation.

9.  Dr. Weber is the Authorized Official for Endo Sedation in Mesquite.

10. Defendant Cedar Park Surgery Center LLP d/b/a Hill Country Surgery Center ("Hill

Country") is located at 801 East Whitestone Blvd, Suite 100, Cedar Park, Texas

78613. Hill Country's mailing address is 15305 Dallas Parkway, Suite 1600,

Addison, Texas 75001. Its NPI number is 1861405607. Hill Country publicly refers

to itself as Hill Country Endoscopy Center. At least three physicians, all of whom are

employed by TDDC, provide services at Hill Country and upon information and

belief, each is a part owner of Hill Country: Junaid Siddiqi, Rafael Amaro, and Dustin

Kiker.

### JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 31 U.S.C. § 3729, *et seq.*, specifically, §§

3732(a) and (b), 1331 and 1345, which specifically confer jurisdiction on this Court.

There have been no statutorily relevant public disclosures of the "allegations or

transactions" described in this Complaint.

12. Should there be public disclosures of the "allegations or transactions" described in

this Complaint, Relator is an original source of such information.

4

13. Venue is proper in the Northern District of Texas under 31 U.S.C. § 1332(a) and sufficient contacts exist for jurisdiction because the Defendants conduct business within this District.

**The Federal False Claims Act and the Texas Medicaid Fraud Prevention Act**

14. The False Claims Act, 31 U.S.C. §§ 3729-3733, provides, *inter alia*, that any person who (a) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (b) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable to the United States for a civil monetary penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B)

15. The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B).

16. The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will

reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

17. "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

18. A private citizen, such as Relator, can bring actions on the government's behalf. "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1).

19. There has been no public disclosure under 31 U.S.C. § 3730(e) of the allegations or transactions in this Complaint with respect to which Relator is not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing this Complaint as required by 31 U.S.C. § 3730(e)(4)(B). Relator has direct and independent knowledge of the information on which the allegations are based. To the extent that any allegations herein have been "publicly disclosed," Relator has knowledge that is independent of and materially adds to such publicly disclosed allegations.

20. Like the federal FCA, Texas has enacted the Texas Medicaid Fraud Prevention Act ("TMFPA").

21. Pursuant to the TMFPA, a person is liable to the State of Texas if the person, among other things:

> (1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

> (2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized.

Tex. Hum. Res. Code Ann. § 36.002 (West)

22. Like the federal FCA, the TMFPA allows individuals, such as Relator, to bring actions on behalf of the State Texas.

### The Medicare and Medicaid Anti-Kickback Statute

23. The Medicare and Medicaid Fraud and Abuse Statute (Anti-Kickback statute), 42 U.S.C. § 1320a-7b(b), was enacted under the Social Security Act in 1977. The so-called Anti-Kickback Statute arose out of Congressional concern that payoffs to those who can influence health care decisions will result in goods and services being provided that are medically inappropriate, unnecessary, of poor quality, or even harmful to a vulnerable patient population. To protect the integrity of federal health care programs from these difficult to detect harms, Congress enacted a prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback actually gives rise to over utilization or poor quality of care.

24. The Anti-Kickback Statute prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for the purchase of any item for which payment may be made under a federally funded health care program. 42 U.S.C. § 1320a-7b(b). The Statute not only prohibits outright bribes and rebate schemes, but also prohibits offering inducements or rewards that has as one of its purposes inducement of a physician to refer patients for services that will be reimbursed by a federal health care program.

7

25. In 2010, Congress amended the Anti-Kickback Act to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act of 2010 (PPACA), Pub. L. No. 111–148 § 6402(f), 124 Stat. 119, 759 (codified at 42 U.S.C. § 1320a–7b(g)).

26. The Anti-Kickback Statute exempts certain transactions from its prohibitions. These exceptions include regulatory safe harbors for space rental, equipment rental, personal services and management contracts and certain *de minimis* gifts, as long as certain standards are met. Those exceptions do not apply to the allegations in this Complaint brought against Defendants.

27. Violation of the Anti-Kickback Statute subjects the violator to exclusion from participation in federal health care programs, civil monetary penalties, and imprisonment of up to five years per violation. 42 U.S.C. §§ 1320a-7(b)(7), 1320a-7a(a)(7).

28. Compliance with the Anti-Kickback Statute is a precondition to participation as a health care provider under the Medicaid, CHAMPUS/TRICARE, Federal Employee Health Benefits Program, and other state and federal health care programs.

29. Either pursuant to provider agreements, claims forms, or other appropriate manner, clinics and physicians who participate in a federal health care programs must certify that they have complied with the applicable federal rules and regulations, including the Anti-Kickback Statute. Those who falsely make such certifications face liability under the FCA and TMFPA.

30. Any party convicted under the Anti-Kickback Statute must be excluded (i.e., not allowed to bill for services rendered) from federal health care programs for a term of at least five years. 42 U.S.C. § 1320a-7(a)(l).

31. The enactment of these acts demonstrates Congress's commitment to the fundamental principle that federal health care programs will not tolerate the payment of kickbacks. Thus, compliance with the Anti-Kickback statutes is a prerequisite to a provider's right to receive or retain reimbursement payments from Medicare, Medicaid, and other federal health care programs.

### The Medicare and Medicaid Programs

### Medicare

32. In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program. Medicare is a federally funded health insurance program primarily benefiting the elderly. Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease. *See* 42 U.S.C. § 426, et seq.

33. Part B of the Medicare Program covers the cost of services performed by physicians and certain other health care providers, both inpatient and outpatient, if the services are medically necessary and directly and personally provided by the provider. Medicare pays providers only for services that it considers are reasonable and necessary for the diagnosis or treatment of illness or injury.

34. Providers who wish to participate in the Medicare program must ensure, among other things, that their services are provided "economically and only when, and to the extent, medically necessary." 42 U.S.C. § 1320c-5(a).

35. The Medicare program is administered through the Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS").

36. As detailed below, the Defendants submitted claims for specific services provided to individual Medicare, Medicaid and TRICARE beneficiaries.

37. As a prerequisite to payment for Medicare, CMS requires physicians and their professional organizations to submit an enrollment form CMS-855I. Each of these forms contains a "Certification" that must be signed by the physician that states:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or [my] organization. . . I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal Antikickback Statute and . . . the Stark law).

38. A physician must also submit Form CMS-1500, certifying that the treatment or procedure is medically necessary.

39. Each physician that participates in the Medicaid program must sign a Medicaid provider agreement with his or her state. Although there are variations in the agreements among the states, all states require the prospective Medicaid provider to agree that he/she will comply with all Medicaid requirements, including the fraud and abuse provisions.

40. TRICARE/CHAMPUS, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces.

41. The Federal Employee Health Benefit Program (FEHB), administered by the United States Office of Personnel Management, provides health insurance for federal employees, retirees, and survivors. 10 U.S.C. §§ 1971-1104; 32 C.F.R. § 199.4(a).

42. Compliance with the Anti-Kickback Statute is also a condition for participation in all the federal health insurance programs, including TRICARE/CHAMPUS and FEHB programs. Accordingly, claims for reimbursement for inpatient or outpatient services under these programs that were the result of referrals tainted by kickbacks, are false claims and are not entitled to reimbursement.

43. Pursuant to the terms of the Medicare Provider Agreement, the Defendants certified that the claims they submitted were eligible for Medicare and Medicaid payment and that the providers had complied with the statutes and regulations relating to Medicare and Medicaid.

44. Because claims that derive from referrals that were tainted by kickbacks were not eligible for reimbursement, submission of such a claim for reimbursement constitutes a false or fraudulent claim under the federal False Claims Act, 31 U.S.C. § 3729. And, those who knowingly cause such false or fraudulent claims to be filed, as the Defendants have done here, are liable under the federal False Claims Act, 31 U.S.C. § 3729.

45. Because they signed these Medicare and Medicaid forms, the Defendants knew that claims that derived from referrals that were tainted by kickbacks are not eligible for federal or state reimbursement.

46. The Defendants undertook their fraudulent schemes of inducing or taking kickbacks from vendors, unnecessary procedures and self-referrals through improper financial relationships and then submitting claims for reimbursements for services provided as a consequence of referrals tainted by illegal kickbacks or other improper financial compensation. Every claim for reimbursement derived tainted by an illegal kickback,

11

self-referral or other unlawful compensation is a false or fraudulent claim for payment under 31 U.S.C. § 3729.

## FACTUAL ALLEGATIONS

47. In its most direct form, the company model involves the formation, by surgeon-owners of an ASC, of an anesthesia services company to provide all of the anesthesia services for the ASC. The anesthesia company contracts with various anesthesia providers, such as CRNAs and anesthesiologists, to provide services at the ASC and the anesthesia providers assign their billing rights to the anesthesia company. The anesthesia company then submits medical claims and receives payment for the services. Because the ASC ownership physicians also have an ownership in the anesthesia company, the owners of the ASC could potentially receive payment from the anesthesia services. In this specific case, the owners of the ASCs received payments in the form of monthly bonuses from the reimbursement money received from the anesthesia service claims. Such monthly bonuses are improper and violate the Anti-Kickback Statute. The remuneration Defendants received through their ownership interests induced them to refer patients for anesthesia services to UAP Keller Endo and Endo Sedation

48. Drs. Siddiqi, Amaro, and Kiker are unable to provide and bill for anesthesia services yet by using a company model, they received remuneration from the anesthesia services they referred to UAP Keller Endo and Endo Sedation.

**Common Ownership of Entities by Defendants and Shared Employees**

49. Drs. Junaid Siddiqi, Rafael Amaro, and Dustin Kiker are all TDDC physicians.

50. Drs. Junaid Siddiqi, Rafael Amaro, and Dustin Kiker work at Hill Country and all three are part owners of Hill Country.

51. In addition to being owned by Drs. Siddiqi, Amaro, and Kiker, upon information and belief, Hill Country is partially owned by TDDC, United Surgical Partners International (USPI), and Cedar Park Regional Medical Center.

52. TDDC, UAP Keller Endo, and Endo Sedation are owned and controlled by the same individuals and entities, share employees, and have the same addresses as one another.

**a. Common Employees and Management**

53. TDDC's founder, Dr. James Weber, is listed as the Authorized Official for Endo Sedation at the TDDC owned Texas GI Endoscopy Center in Mesquite, Texas.

54. TDDC's CFO, Bryan Rhodes, is the Authorized Official for Endo Sedation at the TDDC owned Lone Star Endoscopy in Flower Mound, Texas. Mr. Rhodes is UAP Keller Endo's signatory on the Independent Contractor Agreement between UAP Keller Endo and Relator as described below.

55. TDDC's VP of endoscopic and anesthesia services is Eric Dow. Mr. Dow is also an Authorized Official for Endo Sedation.

56. According to its filings with the Texas Secretary of State, Endo Sedation's Secretary, Treasurer, and VP is Jason Cagle. Mr. Cagle is also CFO and SVP of USPI.

57. Endo Sedation administrator Brandi Wheeler told Relator that she worked for both Endo Sedation and TDDC and that the companies were the "same thing." She said that all Endo Sedation employees, such as Eric Dow, the Director of Anesthesia Services, worked for both Endo Sedation and TDDC.

58. Dr. Siddiqi also told Relator that TDDC and Endo Sedation were the same company.

59. TDDC's manager, TDDC Parent, P.A., is located at 8267 Elmbrook Drive, Suite 200, Dallas, Texas 75247. This is the same address that UAP Keller Endo was located at before it became Endo Sedation.

60. UAP Keller Endo became Endo Sedation after Relator began providing anesthesia services to UAP Keller Endo. As evidence of such change, Relator's paychecks were originally drawn on UAP Keller Endo's bank account and later were drawn on Endo Sedation's bank account.

61. Upon information and belief, TDDC and Dr. Amaro, Dr. Siddiqi, and Dr. Kiker have an ownership or financial interest in Endo Sedation.

62. TDDC has begun requiring that its ASCs use Endo Sedation to provide anesthesia services at the ASCs staffed and/or owned by TDDC physicians.

**Relator Contracts with UAP Keller Endo, LLC to Provide Anesthesia Services at Hill Country**

63. On October 7, 2016, Eric Dow, Endo Sedation's Authorized Official and TDDC's VP of endoscopic and anesthesia services, emailed a proposed Independent Contractor Agreement to Relator.

64. The proposed Independent Contractor Agreement sought to have Relator provide anesthesia services at Hill Country on behalf of UAP Keller Endo.

65. UAP Keller Endo had an agreement to provide for the delivery of anesthesia services for patients at Hill Country.

66. Relator agreed to the terms of the Independent Contractor Agreement and entered into the agreement with UAP Keller Endo. By the terms of the agreement, Relator was not

an employee, but rather, was an independent contractor who received a daily fee for his services regardless of the number of services he provided.

67. Relator began working at Hill Country in or about October 2016 and did so through June 2019.

68. In or about 2017, UAP Keller Endo changed names and began operating as Endo Sedation. Prior to the change, Relator was paid by UAP Keller Endo and after the change, Relator was paid by Endo Sedation.

69. The Independent Contractor Agreement required Relator to assign his billing rights to UAP Keller Endo and upon information belief, Relator did so by signing CMS Form 855. This meant that Relator would not submit health insurance claims for reimbursement to any insurers, including Medicare, Medicaid, and TRICARE for the anesthesia services he provided at Hill Country. Rather, UAP Keller Endo would submit claims for anesthesia services Relator provided and UAP Keller Endo would accept all payment/reimbursement for services provided by Relator.

70. Some of the patients that Relator provided anesthesia services to were Medicare, Medicaid, and TRICARE covered individuals.

**UAP Keller Endo, LLC and Endo Sedation, LLC Submitted Reimbursement Claims for Anesthesia Services Relator Provided at Hill Country**

71. Pursuant to the contractual relationship entered between Relator and UAP Keller Endo, UAP Keller Endo, and later Endo Sedation, submitted reimbursement claims to insurance companies, including Medicare, Medicaid, and TRICARE, for the anesthesia services Relator provided at Hill Country on behalf of UAP Keller Endo and Endo Sedation.

72. UAP Keller Endo and Endo Sedation prepared and submitted all of the claims for anesthesia services Relator provided pursuant to the Independent Contractor Agreement and on behalf of UAP Keller Endo and Endo Sedation.

73. UAP Keller Endo, and later Endo Sedation, received reimbursement for Relator's anesthesia services they submitted to Medicare, Medicaid, and TRICARE for the services Relator provided on behalf of UAP Keller Endo and Endo Sedation.

74. On an average day, the amount of money UAP Keller Endo received as payment from government insurance companies for Relator's services was several thousand dollars more than UAP Keller Endo and Endo Sedation paid Relator.

**Each TDDC Location Has Its Own Anesthesia Budget**

75. Both Dr. Siddiqi and Dr. Kumara Peddamatham separately told Relator that TDDC ASCs, such as Hill Country and Sugar Land – Memorial Hermann Surgical Hospital First Colony and Memorial Hermann Surgery Center Sugar Land, had their own anesthesia budgets or accounts that were monitored and controlled by Endo Sedation and TDDC.

76. Upon information and belief, both facilities are partially owned by TDDC and USPI and they are both staffed with TDDC physicians.

77. The budget deducted all the facility's anesthesia costs and expenses from the amounts received from insurance (including Medicare, Medicaid, and TRICARE) on a monthly basis. At the end of the month, there was a large profit that was then controlled by Endo Sedation and TDDC. Endo Sedation and TDDC would take part of the profit and then pay bonuses to the ASC physicians, such as Drs. Siddiqi, Amaro, Kiker, and Peddamatham.

78. Dr. Peddamatham told Relator that when Relator worked at Dr. Peddamatham's ASC, Relator's expenses, including his daily pay, hotel, and rental car expenses would be deducted from the ASC's monthly anesthesia budget.

79. Like how Relator had to assign his billing rights to UAP Keller Endo and later Endo Sedation, anesthesia providers at the Sugar Land facility also had to assign their billing rights to Endo Sedation.

80. Upon information and belief, not all TDDC locations use Endo Sedation as their anesthesia provider but TDDC has begun pressuring facilities to use Endo Sedation for all anesthesia services.

## The Bonus Payments to ASC Physicians Are Kickbacks in Violation of the Anti-Kickback Statute

81. The Hill Country physicians had an ownership interest in the anesthesia company, UAP Keller Endo and later, Endo Sedation.

82. UAP Keller Endo was the exclusive provider of anesthesia services at Hill Country.

83. As described above, UAP Keller Endo contracted with providers, such as Relator, to provide anesthesia services at Hill Country and other TDDC owned ASCs. UAP Keller Endo paid its anesthesia providers a contracted, daily rate and it then then billed Medicare, Medicaid, and TRICARE directly for the anesthesia services UAP Keller Endo's independent contractors provided.

84. Once all the anesthesia expenses were paid, the remaining money was controlled by, and shared amongst, Endo Sedation, TDDC, and the ASC referring physicians.

85. The physicians' ownership interest in UAP Keller Endo and Endo Sedation allowed them to receive remuneration and induced them to refer their patients to UAP Keller Endo and Endo Sedation for anesthesia services.

86. Such remuneration is prohibited under the AKS because one of the purposes of the remuneration is to generate or reward referrals for anesthesia services.

87. Because the claims that were submitted to Medicare, Medicaid, and TRICARE included claims for services based upon improper referrals and kickbacks, the claims were not reimbursable.

88. When submitting claims for reimbursement, UAP Keller Endo and Endo Sedation represented, warranted, and certified that the claims and the services described therein were in compliance with all laws and regulations, including that they complied with the Anti-Kickback Statute.

89. Such representations and certifications were knowingly false and fraudulent.

90. In reliance on UAP Keller Endo and Endo Sedation's certifications and representations that the claims were in compliance with all laws and regulations, the United States and the State of Texas paid the claims.

91. Upon information and belief, in addition to receiving remuneration from anesthesia services, the TDDC ASC physicians also received remuneration from pathologists' professional fees in a similar manner whereby the TDDC physicians owned a company that provided pathology services and they received some of the reimbursement money

## CLAIMS FOR RELIEF

### Count 1: False Claims Act – 31 U.S.C. § 3729(a)(l)

92. The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-91.

93. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq.

94. Through the acts described above, the Defendants have knowingly presented, or caused to be presented, false or fraudulent claims, to the United States Government, in order to obtain reimbursement for services provided under Medicare, Medicaid, TRICARE, and the Federal Employees Health Benefits Program.

95. As a result of these false claims, the United States has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 2: False Claims Act – 31 U.S.C. § 3729(a)(2)**

96. The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-91.

97. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq.

98. Through the acts described above, the Defendants have knowingly made, used and caused to be made and used false records and statements to get false or fraudulent claims paid in order to obtain reimbursement for services provided under Medicare, Medicaid, TRICARE, and the Federal Employees Health Benefits Program.

99. As a result of these false claims, the United States has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 3: False Claims Act - 31 U.S.C. § 3729(a)(3)**

100. The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-91.

101.    This is a claim for treble damages and penalties under the False Claims Act, 31
        U.S.C. § 3729, et seq.

102.    Through the acts described above, the Defendants conspired to enter into
        agreements to defraud the United States by submitting false and fraudulent claims for
        reimbursement from the Medicare, Medicaid, TRICARE, and the Federal Employees
        Health Benefits Program.

103.    As a result of these false claims and this conspiracy, the United States has been
        damaged and continues to be damaged, in an amount yet to be determined.

                    **Count 4: False Claims Act – 31 U.S.C. § 3729(a)(7)**

104.    The Plaintiff realleges and incorporates by reference the allegations in paragraphs
        1-91.

105.    This is a claim for treble damages and penalties under the False Claims Act, 31
        U.S.C. § 3729, et seq.

106.    Through the acts described above, the Defendants knowingly failed to reimburse
        the Medicare, Medicaid, TRICARE, and the Federal Employees Health Benefits
        Program for moneys wrongfully received.

107.    As a result of these false claims, the United States has been damaged and
        continues to be damaged, in an amount yet to be determined.

**Count 5: Texas Medicaid Fraud Prevention Act - Tex. Hum. Res. Code §§ 36.002(1)**

108.    The Plaintiff realleges and incorporates by reference the allegations in paragraphs
        1 - 91.

109.    Through the acts described above, the Defendants knowingly made or caused to
        be made a false statement or misrepresentation of a material fact to permit a person to

receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code Ann. § 36.002.

110.    As a result of these false claims, the State of Texas has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 6: Texas Medicaid Fraud Prevention Act - Tex. Hum. Res. Code §§ 36.002(2)**

111.    The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-91.

112.    Through the acts described above, the Defendants knowingly concealed or failed to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code Ann. § 36.002.

113.    As a result of these false claims, the State of Texas has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 7: Texas Medicaid Fraud Prevention Act - Tex. Hum. Res. Code §§ 36.002(13)**

114.    The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-91.

115.    Through the acts described above, the Defendants knowingly engages in conduct that constitutes a violation under Section 32.039(b). Section 32.039(b) provides that a person commits a violation if the person:

(1) presents or causes to be presented to the commission a claim that contains a statement or representation the person knows or should know to be false;

(1-b) solicits or receives, directly or indirectly, overtly or covertly any

remuneration, including any kickback, bribe, or rebate, in cash or in kind for

referring an individual to a person for the furnishing of, or for arranging the

furnishing of, any item or service for which payment may be made, in whole or in

part, under the medical assistance program, provided that this subdivision does

not prohibit the referral of a patient to another practitioner within a multispecialty

group or university medical services research and development plan (practice

plan) for medically necessary services;

(1-c) solicits or receives, directly or indirectly, overtly or covertly any

remuneration, including any kickback, bribe, or rebate, in cash or in kind for

purchasing, leasing, or ordering, or arranging for or recommending the

purchasing, leasing, or ordering of, any good, facility, service, or item for which

payment may be made, in whole or in part, under the medical assistance program;

(1-d) offers or pays, directly or indirectly, overtly or covertly any remuneration,

including any kickback, bribe, or rebate, in cash or in kind to induce a person to

refer an individual to another person for the furnishing of, or for arranging the

furnishing of, any item or service for which payment may be made, in whole or in

part, under the medical assistance program, provided that this subdivision does

not prohibit the referral of a patient to another practitioner within a multispecialty

group or university medical services research and development plan (practice

plan) for medically necessary services.

116.     Defendants knowingly offered, solicited and received remuneration for referring

individuals to another person for the furnishing of, or arranging the furnishing of, any

item or service for which payment may be made under the medical assistance program.

117.    As a result of these false claims, the State of Texas has been damaged and continues to be damaged, in an amount yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Relator prays for judgment against the Defendants as follows:

1. That defendants cease and desist from violating the FCA, 31 U.S.C. § 3729, et seq., and the TMFPA, Tex. Hum. Res. Code Ann. § 36.001, et seq.;

2. That this Court enter judgment against the Defendants in an amount equal to three times the amount of damages the United States and the State of Texas have sustained because of the Defendants' actions, plus a civil penalty for each violation of 31 U.S.C. § 3729 and Tex. Hum. Res. Code Ann. § 36.052;

3. That the Plaintiff-Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act and Tex. Hum. Res. Code Ann. § 36.110;

4. That the Plaintiff be awarded all costs of this action, including attorneys' fees and expenses; and

5. That the United States, the State of Texas, and the Plaintiff-Relator recover such other and further relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff-Relator John Delhagen hereby demands a trial by jury.

Submitted on August 13, 2019 by:

MAHANY LAW and
JONES, GILLASPIA & LOYD, L.L.P.


By: _____
JOHN BRUSTER LOYD (TX: 24009032)
Member, Northern District of Texas
JONES, GILLASPIA & LOYD, L.L.P.
4400 Post Oak Parkway, Suite 2360
Houston, Texas 77027
T: (713) 225-9000
F: (713) 225-6126
bruse@jgl-law.com

and

BRIAN H. MAHANY (WI Bar: 1065623)
*pro hac vice* pending
MAHANY LAW
8112 W Bluemound Road
Suite 101
Wauwatosa, WI 53213
T: (414) 258-2375
F: (414) 777-0776
brian@mahanylaw.com


ATTORNEYS FOR PLAINTIFF-RELATOR

JS 44   (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET



3:19CV-1955N

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| USA and State of Texas ex rel John Delhagen | Endo Sedation, LLC; Texas Digestive Disease Consultants, PLLC; Cedar Park Surgery Center LLP d/b/a Hill Country Surgery Center |

**(b)**   County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
John Bruster Loyd; Jones, Gillaspia & Loyd, L.L.P.; 4400 Post Oak Parkway, Suite 2360, Houston, TX 77027; 713-225-9000

Attorneys *(If Known)*

AUG 16 2019

CLERK U.S. DISTRICT COURT

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☐ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☒ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 USC 3729, et seq.
Brief description of cause:
False and fraudulent medical claims submissions

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
08/09/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ John Bruster Loyd

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____